OPINION
{¶ 1} John F. Wright, Jr. appeals from his conviction of possession of crack cocaine in an amount exceeding one gram but less than five grams in violation of R.C. 2925.11(A). The facts surrounding Wright's conviction are set out in his brief and are not disputed by the State. They are as follows:
 {¶ 2} "Shortly after beginning their shift on June 3, 2003, Officers Fain and Jordan drove to the Shell gas station located in the area of Leffel Lane and South Limestone Street. Fain and Jordan had received information from other unnamed Springfield police officers that John Wright (`Appellant') was seen in the vicinity driving a truck owned by C.J. McDavid. The Springfield, Ohio Police Department was looking for Appellant because there were active warrants out for Appellant's arrest in Indiana. Tr. P. 69 line 24 through p. 70, line 25.
 {¶ 3} "The two officers observed McDavid's truck as they approached the Shell station and saw Appellant standing next to the truck. The officers approached Appellant and asked him for identification. Jordan ran the information Appellant gave them concerning his name and social security number through dispatch and discovered that the information given was false. When the discrepancy was discovered, the officers asked Appellant to sit in the back seat of the patrol car while they cleared up the problem concerning Appellant's identity. Prior to placing Appellant in the back seat of the patrol car, Jordan patted down Appellant for weapons. As Appellant approached the patrol car, he broke free and ran away. Fain chased Appellant on foot and Jordan gave chase in the patrol car. Jordan apprehended Appellant approximately 2 minutes later.
 {¶ 4} "Jordan cuffed Appellant, arrested him and patted him down for the second time that evening. Neither officer felt any contraband on Appellant during either pat down search. After Appellant was apprehended and arrested, he was placed in the back of the patrol car with his hands handcuffed behind his back. Fain drove the patrol car to the jail, keeping a close eye on Appellant. Appellant complained of feeling sick and Fain did not want Appellant vomiting in the car. At one point during the drive to the jail, Fain pulled the car over and Appellant vomited into the street. Fain escorted Appellant into the jail while Jordan searched the back seat of the patrol car.
 {¶ 5} "Jordan found a baggy containing `rocks' of crack cocaine tucked down behind the backseat where Appellant sat during the drive to the jail. Neither officer observed Appellant placing the crack in the back seat of the patrol car. Moreover, no fingerprints were found on the baggie."
 {¶ 6} In his first assignment, Wright contends his conviction was against the manifest weight of the evidence. Specifically, he contends that the State failed to present credible evidence that he had control over the crack cocaine found in the patrol car. He notes that Officer Fain's testimony was not credible because his fingerprints were not found on the baggie containing the crack and neither police officer observed him acting in a suspicious manner.
 {¶ 7} Wright argues that Fain's trial testimony was simply not credible that he could remember five months later that he had searched the patrol car prior to beginning his shift on the night of Wright's arrest. Wright notes that Officer Fain needed to examine the offense report before remembering the false name he allegedly provided Fain at the time he was initially stopped. Wright also notes that Officer Fain could not remember what day of the week he arrested him nor the name of the officers who drove the patrol car on the shift before him. More importantly, Wright notes that he was thoroughly searched twice by the officers before they placed him in the patrol car and no crack cocaine was found on him despite the fact he was wearing a light running suit with a form fitting "muscle" shirt.
 {¶ 8} Wright notes that it is hard to believe that 27frac12; inches of rock cocaine would not have been discovered during two thorough searches by two experienced police officers familiar with crack cocaine. Wright notes that if he had possessed the crack cocaine he would have had to secret it deeply down the back of his underwear or in a body cavity and then engage in Houdini-like contortions to remove it while his hands were handcuffed behind his back. Moreover, Wright notes that Officer Fain said he kept a close eye on him during the drive to the jail and did not notice any unusual movement by him in the back seat. Finally, Wright argues that the weight of this evidence outweighs any inference of possession drawn from the fact that cocaine was found in the patrol car after he was transported to the jail. He notes that the police did not recover a crack pipe from him or in the patrol car.
 {¶ 9} The State argues that this assignment should be overruled because the facts are indistinguishable from the facts in State v. Brooks (1996), 113 Ohio App.3d 88. In that case, the Sixth District Court of Appeals held that evidence that police officers found drugs under the rear seat of police cruiser after transporting the defendant to jail, that officer checked the back seat before transporting the defendant, and that cruiser was left unlocked was sufficient to support possession element of conviction for drug abuse. The court noted at pages 90 and 91 of the court's opinion:
 {¶ 10} "Nachtraub testified that he conducts a patdown search of any prisoner before he places them in his cruiser. After a prisoner is removed from his cruiser, Nachtraub testified he `religiously' searches his cruiser for any contraband that may have been left during transportation.
 {¶ 11} "Officer Nachtraub testified that before he seated appellant in the cruiser, he handcuffed both of appellant's hands behind his back. During the ride, appellant, alone in the back seat, was very talkative. Nachtraub also testified that appellant would continually slide his body forward to the front seat only to be told several times to `sit back.' Nachtraub testified that before he transported appellant, he had searched his cruiser and found it to be free of contraband. At no time was the cruiser left unlocked.
 {¶ 12} "Appellant, despite his handcuffs, was capable of limited movement. The jury in this case chose to believe the testimony of Officer Nachtraub that the crack appeared only after appellant had been in the cruiser. Because we can find no evidence in the record that the jury lost its way or created a miscarriage of justice, appellant's first assignment of error is found not well taken."
 {¶ 13} The discretionary power to grant a new trial on the basis that the trial court's judgment was against the manifest weight of the evidence should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175, cited with approval by Ohio Supreme Court in State v. Thompkins
(1997), 78 Ohio St.3d 380 at 387. Because of the deference we must accord the trier of facts' resolution of factual questions, a conviction should not be reversed unless the jury plainly lost its way in arriving at its verdict. State v. Martin, supra.
 {¶ 14} Appellant contends it was not credible that Officer Fain could remember searching his cruiser five months after he allegedly did so prior to finding the crack attributed to him. Appellant was arrested on June 3, 2003 and he was brought to trial on October 28, 2003. Officer Fain testified that he and Officer Jordan always check their cruiser for contraband before beginning their shift on patrol. (Tr. 66). Evid. R. 406 provides that evidence of the habit of a person or the routine practice of an organization whether corroborated or not, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. Fain also testified he specifically remembered checking his cruiser before going out on duty on the evening of June 3, 2003. (Tr. 67, 68).
 {¶ 15} It is not surprising that Officer Fain needed to refer to the offense report to refresh his memory concerning the false name appellant provided him upon appellant's arrest. It is also not surprising that Officer Fain could not remember the day of the week he arrested appellant nor the name of the officers who drove the patrol car on the previous shift. Appellant argues that he was thoroughly searched twice before the officers placed him in the patrol car but did not discover the cocaine on him. Officer Jordan testified that he patted down appellant before placing him in the cruiser but he did not remember whether he patted down appellant's groin area. He explained he was "a little worked up" getting appellant in custody after he ran from Officer Fain and himself. (Tr. 118). Although appellant was wearing a form fitting muscle shirt, Jordan testified appellant was wearing a warm-up jacket over the shirt. In conclusion, there is no evidence to support appellant's contention that the jury lost its way in finding him guilty. The first assignment of error is overruled.
 {¶ 16} In the second assignment, appellant contends that his conviction was based on insufficient evidence as a matter of law. We disagree. To demonstrate that a judgment is based on insufficient evidence, the appellant must show that no rational juror considering the evidence in its best light, could find the State had proven the defendant guilty beyond a reasonable doubt.Jackson v. Indiana (1979), 443 U.S. 307. A rational juror certainly could have found appellant's guilt from the evidence the State presented. The second assignment is also overruled.
 {¶ 17} In his third assignment, Wright contends the trial court committed reversible error in overruling his counsel's objection to the State's questioning of Officer Fain about whether a police officer can constitutionally seize drugs discovered while conducting a patdown search for weapons. The following testimony occurred at trial:
 {¶ 18} "MR. COLLINS: [Prosecutor]. At that point in time when you're patting him down, you're not allowed to be even looking for something like that [cocaine] are you?
 {¶ 19} "MR. MORRIS: [Defense counsel]. Objection, your Honor.
 {¶ 20} "FAIN: It's a pat-down for weapons only.
 {¶ 21} "MR. MORRIS: He's questioning the thoroughness of his search.
 {¶ 22} "THE COURT: Overruled.
 {¶ 23} "THE STATE: You're not allowed to be looking for something like that, are you?
 {¶ 24} "A. No."
 {¶ 25} Appellant argues that it is clear that a police officer is permitted to retrieve contraband during a pat-down frisk if the contraband is immediately apparent from the officer's sense of touch. He contends that if the jury had been properly instructed as to the pre-arrest search, they could have inferred an experienced police officer would have seized the cocaine had he felt it upon patting him down.
 {¶ 26} The trial court properly overruled appellant's counsel's objection to the prosecutor's question. While a leading question, the prosecutor's question correctly premises that a police officer may only conduct a limited pat-down of the outer clothing of a suspect stopped upon reasonable suspicion of criminal activity. Terry v. Ohio (1968), 392 U.S. 1. Officer Fain correctly answered that the pat-down is "for weapons only." On re-cross examination, appellant's counsel could have elicited from Officer Fain whether he could have conducted a more extensive search of a suspect if the pat-down provided probable cause the suspect possessed contraband on his person. Minnesotav. Dickerson (1993), 508 U.S. 366. The third assignment of error is likewise overruled. The judgment of the trial court is Affirmed.
Wofff, J., and Young, J., concur.